UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALEXANDER FLUCKES,

    Plaintiff,

    v.

THE JOHNNY ROCKETS GROUP, INC.,

    Defendant.

No. 07 C 3050
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This employment discrimination case was filed by a former employee of The Johnny Rockets Group, Inc. ("Johnny Rockets" or "Defendant"). Plaintiff Alexander Fluckes began his employment with Johnny Rockets in August 1995, at its Skokie, Illinois restaurant. Fluckes received several promotions during his employment, rising through the ranks from server, to cook, to supervisor, to assistant manager, and then finally to general manager. He was terminated on March 9, 2006, following an internal company investigation, concluding that Fluckes violated numerous Johnny Rockets policies and procedures, including: violation of the sexual harassment policy, violation of the non-fraternization policy, unacceptable conduct, and falsification of company documents. Fluckes, a black male of American national origin, alleges that Defendant's investigation into his actions was deficient because it was motivated impermissibly by numerous forms of discriminatory animus. Further, Fluckes alleges that he was fired after bringing his concerns of discrimination to his superiors, thus constituting retaliation. Johnny Rockets moves for summary judgment on Fluckes' Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 discrimination and retaliation claims, arguing that: (1) Fluckes was not meeting Defendant's legitimate job expectations; (2) Fluckes cannot identify any similarly

situated employees who were treated more favorably than he; and (3) the proffered reasons for Fluckes' termination were not pretextual. For the reasons set forth below, Defendant's motion is granted.

I. Factual Background

Defendant Johnny Rockets is a restaurant chain that operates old-fashioned malt shop motif restaurants throughout the nation, including the one in which Plaintiff Fluckes was employed in Skokie, Illinois. Johnny Rockets promoted Fluckes to the position of general manager of its Skokie restaurant on October 28, 2002. As general manager, Fluckes' responsibilities included managing the restaurant's staff, supervisors, and assistant managers; enforcing Johnny Rockets' policies and procedures, including the policies and procedures contained in Defendant's Employee Handbook; training employees; and adhering to Johnny Rockets' policies and procedures. Fluckes' direct superior was district manager William Hart.

Johnny Rockets provided each of its employees, including Fluckes, with a copy of its Employee Handbook. The handbook outlined Defendant's various policies and procedures. Pertinent here are Johnny Rockets' policies relating to employee time records, fraternization, overtime pay, and sexual harassment. Johnny Rockets' maintained a policy that forbade employees from tampering with any employees' time record. According to Defendant's non-fraternization policy, a manager was forbidden from fraternizing or becoming romantically involved with other managers or with subordinate employees within his chain of command. With regard to overtime pay, Johnny Rockets maintained limits on the number of overtime hours that any employee could work. As with other policies, Fluckes was responsible for enforcing the overtime policy. Finally, the company's sexual harassment policy prohibited harassment and

2

required prompt investigation of allegations of sexual harassment. The handbook explained that Johnny Rockets would take disciplinary action, up to and including termination, as needed to address violations of its various policies. The undisputed facts show that Fluckes understood that Defendant expected him to adhere to the policies contained in the handbook and that Fluckes executed an acknowledgment of receipt of the handbook.

In February 2006, an assistant manager of the Skokie Johnny Rockets restaurant, Danielle Gonzalzles, contacted Hart, indicating that she needed to speak with him during his next visit to the Skokie restaurant regarding certain "issues" taking place at the restaurant.[1] On March 2, 2006, Hart went to the Skokie restaurant and spoke with Gonzalzles, who informed Hart that Fluckes had committed several policy violations. Specifically, Gonzalzles alleged that Fluckes sexually harassed her on two occasions in January 2006 by touching her posterior, left the restaurant unattended on numerous occasions for hours at a time, and clocked into work as a server under his wife's name while on duty as general manager.[2] After securing Gonzalzles' allegations in writing, Hart immediately commenced an investigation into her allegations.

---

[1] On February 23, 2006—after Gonzalzles contacted Hart but before Hart went to the Skokie restaurant to discuss her concerns—part-time supervisor and server Jose Escalante contacted Hart by telephone. Escalante reported that an employee had seen Gonzalzles with a man in the back room of the restaurant with the lights off. Gonzalzles admitted to the allegation when Hart confronted her during his March 2, 2006 visit to the restaurant. She stated that the man was an employee at a different Johnny Rockets restaurant location. Hart suspended Gonzalzles pending an investigation. Ultimately, Hart reinstated Gonzalzles, concluding that she had not violated the company's non-fraternization policy because the man was not in her line of authority and did not work at the same location. Hart did, however, issue Gonzalzles a final written warning for having the man in the back room of the restaurant with her, leaving the restaurant unattended while she was in the back room, and for failing to notify Hart of violations of company policy.

[2] Also during the March 2, 2006, meeting, after listening to Gonzalzles' allegations against Fluckes, Hart discussed Escalante's allegations against Gonzalzles. *See supra* n.1.

Hart met with Fluckes on the following day, March 3, 2006, to discuss Gonzalzles' allegations. During that meeting, Plaintiff admitted that Tiwanna Jackson was his wife and that she had worked at the Skokie restaurant in late December 2005 and possibly in early January 2006. Fluckes denied Gonzalzles' allegation of sexual harassment. At the conclusion of the meeting, Hart suspended Fluckes pending an investigation into Gonzalzles' allegations.

Hart then proceeded with the investigation by interviewing ten additional employees of the Skokie restaurant. The witness interviews corroborated some, but not all, of Gonzalzles' allegations. First, with regard to Gonzalzles' sexual harassment allegation, one employee, server Ashley Yalibut, reported to Hart that she witnessed Fluckes touch Gonzalzles' posterior on one of the two alleged occasions. Next, with respect to allegations that Plaintiff clocked in as a server while on duty as a manager, one interviewee, server Paola Apolinar, indicated that she and other employees were aware of Fluckes clocking in as a server under the name "Jwan." Hart learned that "Jwan" was a nickname for Fluckes' wife, Tiwanna Jackson. Several interviewees reflected that Plaintiff's wife had worked at the Skokie restaurant during December 2005, but none of them had knowledge of her working during January 2006. Hart checked Johnny Rockets' employee time record system, which indicated that Jackson was clocked in for fourteen days during the period from December 26, 2005, through January 22, 2006, and that Fluckes had not terminated Jackson's employment until March 2, 2006, which was the same date that Hart commenced his investigation into Fluckes' violations of company policies. Hart was unable to conclude from his investigation that Fluckes had left the store unattended as alleged by Gonzalzles.

During the course of his investigation, Hart also learned of other violations of Johnny Rockets' policies occurring at the restaurant. Apolinar told Hart that part-time supervisor and server Jose Escalante's wife worked at the restaurant and that Escalante also had been clocking in under his wife's name while she was out on maternity leave. Escalante admitted to the allegation against him, explaining that he had clocked in under his wife's name because he was approaching his own overtime limit. Additionally, Escalante reflected that Fluckes was aware of Escalante's actions and had even given him permission to do so. Hart suspended Escalante for violating the company's policies concerning overtime pay, fraternization, and tampering with time records. Additionally, Hart demoted Escalante by stripping him of his position as supervisor.

Hart met with Fluckes again on March 7, 2006 to present Fluckes with the information collected during the investigation and to provide Fluckes with an opportunity to explain his actions. Fluckes continued to deny any wrongdoing, despite witness, time record, and other evidence to the contrary. Fluckes asserts that it was at this point that he complained to Hart that the investigation was unfair because it was discriminatory. Yet Hart reflects that he was unaware of Fluckes expressing any such complaint and Fluckes does not claim to have complained to anyone else regarding the alleged discrimination.

Hart then closed his investigation, concluding that Fluckes violated the following Johnny Rockets' policies: Fluckes falsified time records by working under his wife's name; Fluckes violated the company's non-fraternization policy by employing his wife as a direct subordinate; Fluckes violated Johnny Rockets' overtime policy by allowing Escalante to work under Escalante's wife's name; and Fluckes violated the sexual harassment policy by touching

Gonzalzles' posterior. Accordingly, Hart recommended to his superiors that Fluckes be terminated. Two Johnny Rockets vice presidents and a human resources manager granted Hart the authority to terminate Fluckes, which Hart did on March 9, 2006. In terminating Fluckes, Hart explained to him that the reason for the termination was the numerous policy violations that Hart found in his investigation.

II. DISCUSSION

   *A. Standard of Review*

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

   *B. Race Discrimination in Violation of Title VII*

Title VII of the Civil Rights Act of 1964 makes it illegal for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove his case of intentional employment discrimination under Title VII by using either the direct method or the indirect method.³ *de la Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) (quoting *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)).

Under the direct method, Fluckes must put forth evidence that his employer's decision to terminate him had a discriminatory motivation. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). He may do so under the direct method by providing direct evidence, such as an "outright admission" of discrimination, *see Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005), or by presenting sufficient circumstantial evidence that points directly to a discriminatory reason for the termination decision. *See Rhodes*, 359 F.3d at 504 (quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)). Here, Fluckes does not have any direct evidence of discrimination. Nor does he present circumstantial evidence pointing directly to a discriminatory reason for his termination. Thus, Fluckes cannot proceed under the direct method.

To prove discrimination under the indirect, burden-shifting method, Fluckes must demonstrate that: (1) he is a member of a protected class; (2) he reasonably performed his job to his employer's expectations; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside his protected class more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534,

---

³ The same prima facie requirements that are necessary to prove Title VII discrimination claims apply to § 1981 discrimination claims. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007)).

538 (7th Cir. 2007). If Fluckes satisfies each of these elements, the burden then shifts to his employer to offer a legitimate, non-discriminatory reason for the decision to terminate his employment. *McDonnell Douglas,* 411 U.S. at 802-03. If his employer successfully satisfies this requirement, then the burden shifts back to Fluckes to prove that his employer's stated reason was a pretext for discrimination. *Id*. at 804.

It is undisputed that Plaintiff is both black[4] and that his termination constitutes an adverse employment action. Thus, Plaintiff satisfies the first and third elements of the prima facie case for race discrimination.

With regard to the second element, Fluckes cannot show that he was meeting Johnny Rockets' legitimate expectations. "The proper inquiry mandates looking at [Fluckes'] job performance through the eyes of [his] supervisors at the time of [his] suspension and termination." *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). As explained above, Hart's investigation concluded that Fluckes violated numerous company policies. Hart determined that Fluckes falsified time records, violated Johnny Rockets' non-fraternization policy, violated the company's overtime pay policy, knowingly permitted subordinates violating the overtime pay policy, and violated the sexual harassment policy. Johnny Rockets made clear in its handbook that any one of these offenses could result in disciplinary action up to and including an employee's termination. Fluckes did not violate just one policy; he violated a

---

[4] In addition to race discrimination, Plaintiff's complaint alleges gender and national origin discrimination. Fluckes is a male of American national origin. Under these facts, in which an employee essentially alleges reverse discrimination, the employee "must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against [men or Americans] or evidence that there is something 'fishy' about the facts at hand." *Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005). Fluckes offers nothing to overcome this additional burden. Thus, his claims of discrimination based on sex and national origin fail as a matter of law.

handful of them. "Because this Court does not—and will not—sit as 'super-personnel' to question the wisdom or business judgment of employers, this inquiry ends here, with [Fluckes'] inability to sustain [his] burden." *See id*. (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997) (stating that it is not the province of the court to decide whether the employer's reason was wise, fair or correct, so long as it was really the reason)). Accordingly, I find that Fluckes cannot satisfy the second element of the prima facie case.

Nor can Fluckes satisfy the fourth element of the prima facie case because he does not present any similarly situated employees who were treated more favorably than he. Fluckes appears to argue that he was treated less favorably than Danielle Gonzalzles and Jose Escalante because neither of these subordinate employees was terminated upon Hart's findings that they also violated certain Johnny Rockets' policies. "In order for an individual to be similarly situated to the plaintiff, the plaintiff must show that the individual is directly comparable to [him] in all material respects. Factors relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." *Burks v. Wis. DOT*, 464 F.3d 744, 751 (7th Cir. 2006) (internal citations and quotations omitted). Additionally, and particularly relevant here, in order to show that a coworker is similarly situated to a terminated employee, the employee must show that the other coworker had a "comparable set of failings." *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 667 (7th Cir. 2008) (quoting *Burks*, 464 F.3d at 751). Fluckes was neither similarly situated to Gonzalzles nor Escalante in either his position or in his failings. Gonzalzles was an assistant manager[5] and Escalante was a part time supervisor and

---

[5] Fluckes argues that Gonzalzles was not an assistant manager but was, in fact, a general manager with the same status as Fluckes. To defend this factual proposition, Fluckes cites the

9

server in the Skokie restaurant. Under Johnny Rockets' corporate hierarchy, then, Gonzalzles and Escalante both reported to Fluckes. In contrast, Fluckes was the general manager of the Skokie restaurant and reported to district manager Hart.

Further, Fluckes cannot consider Gonzalzles and Escalante similarly situated because the infractions found against them were not comparable to those found against Fluckes. The Seventh Circuit has held that an employee who claims he was similarly situated to a coworker makes an "unsuitable comparison" when he was not disciplined for the same reasons as the coworker. *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 745 (7th Cir. 2002). Hart determined that Gonzalzles violated company policy by having the man in the back room of the restaurant with her, leaving the restaurant unattended while she was in the back room, and for failing to notify Hart of violations of company policy. For these violations, Hart suspended Gonzalzles and issued her a final written warning. Hart determined that Escalante violated the company's policies concerning overtime pay, fraternization, and tampering with time records. For these violations, Hart suspended Escalante and stripped him of his position as supervisor. Fluckes, on the other hand, occupied a position of greater responsibility and violated more Johnny Rockets' policies than either Gonzalzles or Escalante. Fluckes held the highest position of authority within the Skokie restaurant and, as explained above, Hart found that he violated five Johnny Rockets policies. Although Gonzalzles and Fluckes violated certain of the same policies that

---

written warning that Hart filed against Gonzalzles for her violations of company policy. For Gonzalzles, the signature line of the document reads "Danielle Gonzalzles, Manager." Even taken in the light most favorable to Fluckes, this isolated shred of evidence does not prove that Gonzalzles was a general manager of the Skokie restaurant; rather, the document contains a potential ambiguity over whether Gonzalzles was an assistant manager or a general manager. This ambiguity is easily settled when viewed in context with Gonzalzles' responsibilities as compared to Fluckes' within the restaurant. Further, Fluckes' allegation contradicts his own deposition, in which he states that Gonzalzles was an assistant manager. Pl.'s Dep. 58. None of the evidence before me indicates that Gonzalzles functioned as a general manager like Fluckes.

10

Fluckes violated, neither Gonzalzles nor Escalante were found to have violated the company's sexual harassment policy. Accordingly, I find that Fluckes was not similarly situated to the other employees that he claims were treated more favorably than he.

Because Fluckes cannot prove the second and fourth elements, as explained above, I find that Fluckes cannot establish a prima facie case of discrimination.

Even assuming arguendo, that Fluckes could prove a prima facie case of discrimination, Johnny Rockets offers legitimate, non-discriminatory reasons for its decision to terminate Fluckes that Fluckes cannot disprove as pretext for discrimination. Defendant asserts that it terminated Plaintiff for his numerous violations of company policy, as uncovered by Hart's investigation.

Since Defendant offers a legitimate, non-discriminatory reason for its employment decision, the burden shifts back to Fluckes to demonstrate that Johnny Rockets' decision to terminate his employment was a pretext for discrimination. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 472-73 (7th Cir. 2002) (explaining that, once the defendant offers a legitimate, non-discriminatory reason for its employment decisions, the employee must "muster sufficient evidence to convince a rational jury that [the employer's] justifications were pretextual."). To show pretext, Fluckes "bears the burden of demonstrating that [Johnny Rockets'] ostensible justification for its decision is unworthy of credence." *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888 (7th Cir. 2001). Fluckes "may make the requisite showing by 'providing evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'" *See id*. at 888-89 (quoting *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998)). However, if Johnny Rockets honestly believed its reason for terminating Fluckes, then

he cannot meet his burden. *See id*. at 889. This is true even if Johnny Rockets' reason for the adverse actions was "foolish or trivial or even baseless." *See id*. Here, Plaintiff fails to carry his burden of establishing pretext.

Fluckes offers no evidence that suggests that Johnny Rockets' explanation for his termination was pretext for discrimination. Beyond conclusory statements that discrimination occurred, the only hint of evidence that Plaintiff can muster regarding pretext is that Hart went "straight into the investigation" without taking Plaintiff's word that he had not engaged in the conduct alleged by Gonzalzles. *See* Pl.'s Dep. 63. This is unavailing for two reasons. First, it implicitly concedes that Hart believed that Fluckes committed the policy violations for which he was fired. Whether Fluckes, in fact, committed the violations is irrelevant at this point in the analysis so long as his employer believed that he violated company policies and terminated him for that reason. Second, Hart was justified in believing that Fluckes had committed numerous policy violations, by virtue of the corroborating evidence that Hart collected from more than ten employee interviews and employee time record data. For these reasons, Plaintiff has failed to show that Johnny Rockets' reason for terminating Fluckes was a pretext for discrimination.

As explained above, Fluckes cannot establish a prima facie case of discrimination because he did not satisfy his employer's expectations and because he cannot prove that his employer treated similarly situated employees outside his protected class more favorably. Even if Fluckes could satisfy each of the elements for a case of discrimination, Johnny Rockets offers a legitimate, non-discriminatory reason for the termination, which Fluckes cannot show was a pretext for discrimination. Accordingly, Fluckes cannot proceed under the indirect method. I find that Plaintiff's discrimination claim cannot survive summary judgment.

*C. Retaliation in Violation of Title VII*

Fluckes' retaliation claim appears to allege that he was retaliated against when he was terminated as a consequence of complaining about discrimination that took place in Hart's investigation. Fluckes can prove retaliation under either the direct or indirect method.[6] *See Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008).

Under the direct method, Fluckes must present evidence, direct or circumstantial, showing that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) a causal connection exists between the two. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008) (citing *Metzger*, 519 F.3d at 681). Alternatively, Fluckes may establish a case of retaliation under the indirect method by showing that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; (3) he met his employer's legitimate expectations; and (4) he was treated less favorably than some similarly situated employee who did not engage in statutorily protected activity. *See Nichols v. S. Ill. University-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007); *Burks*, 464 F.3d at 759 (citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)).

At the outset, I note that Fluckes presents weak arguments that he engaged in protected activity. An employer cannot discriminate against an employee for voicing opposition to employment practices deemed unlawful under Title VII. But at the same time, to state an actionable retaliation claim, "the [employee's] complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class." *Fischer v.*

---

[6] The same elements that are necessary to prove Title VII retaliation claims apply to § 1981 retaliation claims. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007) ("[W]e generally have applied the same prima facie requirements to discrimination claims brought under Title VII and section 1981. We see no reason to apply different requirements between the statutes with regard to retaliation claims.") (citations omitted).

*Avanade, Inc.*, 519 F.3d 393, 409 (7th Cir. 2008) (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). "An employee can honestly believe [he] is the object of discrimination, but if [he] never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000). Fluckes asserts that he expressed to Hart his belief that discrimination motivated Hart's investigation on their March 7, 2006 meeting. Although such a complaint could constitute protected activity, Fluckes' assertion is only barely substantiated by the facts. Further, even if Fluckes did dispute the motivation behind Hart's inquiries, it is far from evident that Fluckes believed Hart's behavior was illegal at the time. *See Tate v. Executive Mgmt. Servs., Inc.*, No. 07-2575, 2008 WL 4527707, at *5 (7th Cir. Oct. 10, 2008); *Mattson v. Caterpillar, Inc.,* 359 F.3d 885, 891 (7th Cir.2004) ("The purpose of requiring that plaintiffs reasonably believe in good faith that they have suffered discrimination is clear. Title VII was designed to protect the rights of employees *who in good faith protest the discrimination they believe they have suffered* and to ensure that such employees remain free from reprisals or retaliatory conduct.") (emphasis added). At some point during Hart's investigation, Fluckes states that he felt Defendant's investigation into his actions was not fair. When asked about the source of the perceived unfairness, Fluckes' deposition testimony reflects far greater concern with Hart's investigation process of taking statements from Fluckes' accusers before meeting with Fluckes than it shows good belief that discrimination motivated the investigation. *See* Pl.'s Dep. 64-67. Hart denies that Fluckes complained to him about any alleged discrimination at any point during Fluckes' employment with Johnny Rockets. Further, Fluckes admits that he did not complain about perceived discrimination to any other Johnny Rockets employee at any other time during his employment.

14

Regardless of Fluckes' weak showing that he engaged in protected activity, Fluckes' retaliation claim fails under the direct method because he cannot show that a causal connection exists between the purported protected activity (complaining about discrimination to Hart on March 7, 2006) and the adverse employment action (his termination). In this context, the Seventh Circuit recognizes that a "causal link between the protected expression and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Gates*, 513 F.3d at 686 (internal quotation marks omitted) (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 545-46 (7th Cir. 2005)). Fluckes fails to put forth such evidence. Indeed, Fluckes can point to nothing that reasonably suggests Johnny Rockets' actions were motivated by anything other than business judgment. Hart collected evidence demonstrating Fluckes' numerous violations of company policy prior to the time that Fluckes alleges he complained about discrimination. As discussed above, this evidence was sufficient to justify Fluckes' termination before the March 7 meeting between Fluckes and Hart, and Fluckes offers no evidence that his termination was the result of his supposed complaint to Hart about discrimination. I find that Plaintiff cannot prove a causal link between Plaintiff's asserted protected activity and Defendant's employment decision. Therefore, Plaintiff cannot proceed under the direct method of retaliation.

Finally, Fluckes' retaliation claim also fails under the indirect method for reasons similar to those that proved fatal to his discrimination claim. As explained above, Fluckes did not meet his employer's legitimate expectations and he cannot identify a similarly situated employee who was treated better than he. Accordingly, Fluckes cannot proceed under the indirect method of retaliation.

III. Conclusion

I find no dispute of material fact in Fluckes' claims of Title VII or § 1981 discrimination or retaliation. For the reasons stated above, Fluckes has not met his burden under either the direct or the indirect methods of establishing discrimination and retaliation. Not only does he fail to establish a prima facie case of discrimination, but Defendant Johnny Rockets has stated several legitimate, nondiscriminatory reasons for the termination, which Fluckes cannot successfully refute as pretextual. Nor can Fluckes prove sufficient causation between the alleged protected activity and Johnny Rockets' employment decision sustain his retaliation claim. Defendant's motion for summary judgment is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: December 10, 2008